Mark CASE

v.

Charles A. BOGOSIAN, Jr.,

v.

Robert ANDREWS, in His Official Capacity as Chief of Police of the town of West Greenwich, et al.

No. 97–58–Appeal.

Supreme Court of Rhode Island.

March 27, 1998.

Timothy J. Dodd, Providence, for Plaintiff.

Karen A. Clarke, Kevin A. McKenna, Michael A. Ursillo, Providence, for Defendant.

Before WEISBERGER, C.J., and FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before a three-judge panel of this court pursuant to an order directing the parties to appear and show cause why this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the parties' memoranda, we perceive that cause has not been shown. Accordingly, we shall decide the issues raised by this appeal at this time. The facts insofar as they are relevant to our discussion are as follows.

This litigation has as its genesis an oral agreement between plaintiff Mark Case

(Case), and defendant Charles A. Bogosian, Jr. (Bogosian), in which Case agreed to install a replacement engine in Bogosian's 1987 Chevrolet Blazer (vehicle). It is undisputed that Case completed the installation on May 25, 1991. On June 7, 1991, Case sent a certified letter to Bogosian demanding $1,200 for the repairs plus storage charges amounting to $195. Case also indicated that he intended to charge for the storage of the vehicle at the rate of $15 per day. At this point, however, the two parties reached an impasse. Case refused to release the vehicle to Bogosian unless and until the outstanding charges for services and storage were paid. On the other hand, Bogosian refused to make payment without (1) an opportunity to inspect the vehicle and (2) evidence regarding the origin of the replacement engine. When neither party acceded to the other's demands, the vehicle remained in Case's possession.

In July 1991, Case filed a voluntary chapter 7 proceeding in the United States Bankruptcy Court and listed as an asset a claim for $1,395, although he did not describe the nature of this claim. The trial justice found that the trustee had abandoned the claim, and the parties do not dispute this finding before this court.

In January 1992, Case moved to Florida. Prior to this move, however, Case entered into an agreement with third-party defendant Norman Carpenter (Carpenter). Carpenter agreed to store the vehicle for Case without the knowledge or consent of Bogosian, who subsequently reported the vehicle stolen to the Warwick police department. On July 12, 1992, an officer of the West Greenwich police department observed Carpenter's wife in possession of the vehicle. Upon discovering that the vehicle had been reported stolen, the officer seized the vehicle and had it towed to the West Greenwich police department. After learning that Carpenter was holding the vehicle for Case, who was asserting a lien on it, West Greenwich Police Chief Robert Andrews (Andrews) ordered the vehicle returned to Carpenter. This litigation ensued.

Case filed a complaint seeking $1,200 for repairs to the vehicle plus the aforementioned storage charges. Bogosian answered,

denied liability, and asserted a counterclaim against Case for breach of contract and conversion. Bogosian subsequently filed a third-party complaint for conversion against the town of West Greenwich and Andrews, as well as against Carpenter. The town, Andrews, and Carpenter answered this complaint and denied liability. In addition, Carpenter also filed a counterclaim against Bogosian for storage charges that had accrued while the vehicle was in Carpenter's possession.

A trial on all claims was conducted before a justice of the Superior Court sitting without a jury. The trial justice issued a lengthy and well-reasoned decision in which she held that Case was the proper party to pursue a claim for repairs and storage since the trustee in bankruptcy had abandoned the claim. She also declared that since the original Case–Bogosian oral agreement did not comply with the provisions of G.L. 1956 § 34–32–1, a valid lien for repairs could not attach. Section 34–32–1 provides:

"No person shall attach or cause a lien to be levied upon any motor vehicle for money due for repairs to the motor vehicle in an amount exceeding an authorization *signed by the owner* indicating the cost of the repairs." (Emphasis added.)

The trial justice reasoned that since a valid lien for repairs had not attached to the automobile, Case could not assert a lien for storage. She then proceeded to declare that Case had no right to retain possession of the vehicle. Consequently, the trial justice found Case liable to Bogosian for conversion of the vehicle and assessed damages equal to the fair market value of the automobile at the time it was converted. At oral argument the parties indicated they have agreed on the measure of damages in this case. Although the finding of liability for conversion has not been specifically addressed by either party on appeal, liability for conversion is dependent upon this court's resolution of whether any lien for repairs and storage of the vehicle exists. Case and Carpenter have claimed an appeal from that portion of the trial justice's decision declaring that no valid lien for stor-

age or repairs exists in the context of this case.[1]

At oral argument Case conceded that he does not have a valid lien for the cost of repairs since his oral agreement with Bogosian did not comply with § 34–32–1. Nevertheless, Case insists that he has retained a valid lien for storage charges pursuant to G.L. 1956 § 34–35–1 entitled "Complaint for order of sale." We conclude, however, that Case's reliance on this statute is misplaced and affirm the decision of the trial justice.

Section 34–35–1 states in pertinent part:

"Whoever has a lien for money due him or her on account of work and labor, care and diligence, or money expended on or about personal property or for storage of personal property or has a lien therefor on account by reason of any contract expressed or implied, if the money is not paid within thirty (30) days after a demand in writing delivered to the owner or one of the owners * * * may apply for an order for the sale of the property in satisfaction of the debt by civil action in the superior court for the county where the plaintiff or one of the plaintiffs resides."

As the trial justice pointed out, § 34–35–1 "merely serves to enhance the existing common law lien, providing a method by which the lien holder can satisfy its lien, but does not transform the common law lien into a statutory lien." *In re DiPasquale*, 105 B.R. 187, 190 (Bankr.D.R.I.1989). Consequently, the issue of whether Case may assert a common-law lien for storage charges is squarely before us.

"The principle upon which the common-law lien arose was that every bailee for hire, who, by his labor, material or skill, has imparted an additional value to the property placed in his hands had a lien thereon for the agreed or reasonable charges and the right to hold the property until paid." *Alabama Farm Bureau Mutual Casualty Co. v. Lyle Service Ambulance–Wrecker*, 395 So.2d 90, 93 (Ala.Civ.App.1981) (citing 2 Kent's Commentaries 635; VII Sir William Holdsworth, *A History of English Law* at 512). This common-law lien could be perfected through possession. *See, e.g., In re DiPasquale*, 105 B.R. at 190. It has generally been held, however, that a common-law lien is not applicable to storage charges incurred on an automobile. *See Alabama Farm Bureau Mutual Casualty Co.*, 395 So.2d at 93; *Capson v. Superior Court of Arizona, County of Maricopa*, 139 Ariz. 113, 677 P.2d 276, 278 (1984). *See also* 38 Am.Jur.2d *Garages, and Filling and Parking Stations*, § 144 at 439 (1968) (vast majority of cases have "held that a garage keeper has no common-law lien for charges for storage of a motor vehicle").

Therefore, since a lien for storage of an automobile was not cognizable at common-law and because Case has failed to comply with the statutory provisions of § 34–32–1 for liens on motor vehicles, his claim must fail. Likewise, since Carpenter's claim for storage costs is entirely derivative of Case's claim, we must also deny his appeal.

For the foregoing reasons the plaintiffs' appeal is denied and the judgment appealed from is affirmed. The papers in this case are remanded to the Superior Court.

LEDERBERG and BOURCIER, JJ., did not participate.

---

1. Case has appealed that portion of the trial justice's decision declaring that his failure to comply with G.L. 1956 § 34–32–1 defeats a lien for repair charges and consequently prevents Case from claiming a valid lien for storage charges. Case alleged at trial and before this court that the provisions of G.L. 1956 § 34–35–1 entitled, "Complaint for order of sale," creates a lien for both storage and repairs. Case makes no other claim for the value of the repair charges under any other theory of recovery.